UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALLIED INTERSTATE LLC,

              Plaintiff,

      -v-                             No.  12 Civ. 4204 (LTS)(SN)

KIMMEL & SILVERMAN P.C. et al.,

              Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Plaintiff Allied Interstate LLC ("Allied" or "Plaintiff") brings this action against

Kimmel & Silverman P.C. ("K&S"), a Pennsylvania based law firm, and Craig Thor Kimmel,

who is the "Kimmel" of K&S (collectively, "Defendants"), for trademark infringement and

related claims under the Lanham Act, 15 U.S.C. § 1051 et seq., and New York state law.

Plaintiff seeks to enjoin Defendants from using Plaintiff's "ALLIED INTERSTATE™ "

trademark and any "confusingly similar" terms in commerce and requests compensatory

damages, punitive damages, costs and attorneys' fees.  The five-count Complaint asserts two

claims of trademark dilution, brought under 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. L. § 360-l

respectively (Counts One and Five); one claim of unfair competition under 15 U.S.C. § 1125(a)

(Count Two); one claim of false designation of origin under 15 U.S.C. § 1125(a) (Count Three);

and one claim of trademark infringement under New York common law (Count Four).

Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332

and 1367.  After careful consideration of the parties' submissions and arguments, and for the

following reasons, the Court grants Defendants' motion for judgment on the pleadings in its

entirety.

BACKGROUND

The following facts are derived from the allegations in the Complaint and are

assumed to be true for the purposes of the instant motion.  Plaintiff Allied Interstate provides

"accounts receivable, customer retention and debt collection services" to its clients.  (Compl.

¶ 10.)  As such, Plaintiff's work is governed by the Fair Debt Collection Practices Act (FDCPA),

a federal statute that seeks to eliminate abusive debt collection practices.  15 U.S.C. § 1692 et

seq.  Defendants administer a website, found at the URL www.creditlaw.com, that is intended to

solicit new clients for Defendants, advertising Defendants' services and generating leads for

potential FDCPA claims against Plaintiff.  (Compl. ¶¶ 25-27.)  Plaintiff alleges that "Defendants

have embarked upon an Internet advertising campaign" that makes unlawful use of the ALLIED

INTERSTATE™ mark as part of an "overall strategy to create a cottage industry of often

frivolous FDCPA lawsuits against Allied."  (Compl. ¶ 24.)

Upon accessing Defendants' website, the viewer encounters a header reading:

"When debt collectors called you, they never expected you to call us!"  (Compl., Ex. A.)  Below

this header are the words: "Stop Debt Collector Harassment! The law protects you from unfair

and deceptive debt collection practices."  (Compl. ¶ 28, Ex. A.)  Slightly further down the page,

users are invited to complete an online form for a "FREE Case Review."  (Compl. ¶ 29.)  The

online form allows users to select "Allied Interstate," among other options, in response to the

question "Who Have You Heard From?"  (Id.)  Additionally, a column on the left side of every

page of Defendants' website includes a link to "Stop Allied Interstate Debt Harassment," which

redirects the user to a page describing Allied's purported misconduct.  (Compl. ¶ 31.)

In addition to the explicit mention of Allied on Defendants' website, the Complaint alleges that Defendants make use of Allied's trademark in two other ways.  First, the Complaint alleges that Defendants have incorporated the mark into the "metatags, keywords and/or hidden words" of www.creditlaw.com.  (Compl ¶ 32.)  "Metatags" are the words and phrases within a website's HTML code used to identify the site's content.  (Compl. ¶ 33; see also Ex. C.)  "Hidden words" are text on a webpage that is typically invisible to a human viewer – for example, because the text is the same color as the page's background – but which can nonetheless be detected by search engines' indexing tools.  (Compl. ¶ 35.)  By incorporating "Allied Interstate" into www.creditlaw.com through these methods, Plaintiff contends, Defendants increased the likelihood that search engines would direct Internet users to Defendants' website in response to searches of Plaintiff's name. (Compl. ¶ 39.)

The Complaint further alleges that Defendants purchased the term "Allied Interstate" as a keyword through Google's AdWords program.  (Compl. ¶ 37.)  Keywords are descriptive terms and phrases submitted by website owners to search engines that are used to describe and index their websites.  (Compl. ¶ 34.)  Search engines may charge a fee for prominently displaying a link in response to searches for specified keywords.  (Id.)  Plaintiff avers that Defendants have purchased "Allied Interstate" as a keyword from Google, which Plaintiff claims is evidenced by the fact that a link to Defendants' website is displayed as a "sponsored link" at the top of the list of results when an Internet user conducts a Google search for "Allied Interstate."  (Compl. ¶ 37.)  Exhibit D to Plaintiff's Complaint displays a list of results for a Google search of "allied interstate."  (Compl., Ex. D.)  Underneath the words "Ads related to allied interstate" is a link titled "Stop Collection Calls – Is Allied Interstate Calling You?"  (Id.)  Below the link are two lines of text, the first listing Defendants' URL,

www.creditlaw.com, and the second bearing the slogan "Stop the calls for free!"  (Id.)

DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is decided under the same legal standard as a motion to dismiss a complaint under Rule 12(b)(6) when the movant contends that the Complaint fails to state a claim upon which relief can be granted.  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).  When deciding a Rule 12(b)(6) motion, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 663 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.

As a preliminary matter, Defendant contends that Plaintiff's federal trademark infringement claims must be dismissed because Defendant's use of Plaintiff's mark in metatags, hidden words and keywords does not constitute "use in commerce" under the Lanham Act.  15 U.S.C. § 1127 provides that a mark "shall be deemed to be in use in commerce" "when it is used or displayed in the sale or advertising of services."  15 U.S.C.S. § 1127 (LexisNexis 2006). The metatags and hidden words, however, bring users to the Defendants' website, which promotes Defendants' services, "effectively act[ing] as a conduit, steering potential customers."  Bihari v. Gross, 119 F. Supp. 2d 309, 318 (S.D.N.Y. 2000) (considering the likelihood of confusion under the Lanham Act from defendant's use of plaintiff's mark in metatags).  Indeed, the Second

Circuit has held that "Google's utilization of [third party trade] mark[s] [by selling them to other advertisers through Google's AdWords program as keyword search terms] fits literally within the terms specified by 15 U.S.C. § 1127." Rescuecom Corp. v. Google Inc., 562 F.3d 123, 129 (2d Cir. 2009). Although Defendants attempt to draw a distinction between Google's sale of Plaintiff's mark and their own purchase thereof, it is clear "that defendants' use of the mark to purchase AdWords to advertise its products for sale on the Internet constitutes 'use in commerce.'" CJ Products LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 158 (E.D.N.Y. 2011) (citing Rescuecom, 562 F.3d at 127). Plaintiff has thus sufficiently alleged that Defendant is using Plaintiff's trademark in commerce. The Court, accordingly, considers the sufficiency of all of Plaintiff's infringement and dilution claims under the Lanham Act and corresponding state law.

Plaintiff's Dilution Claims (Counts One and Five)

Plaintiff's Claim for Dilution Under the Lanham Act, 15 U.S.C. § 1125(c)

Under the Lanham Act, the owner of a "famous mark" is "entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment." 15 U.S.C.S. § 1125(c)(1)(LexisNexis Supp. 2013); see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2d Cir. 2009). Plaintiff alleges that Defendants have diluted its mark by tarnishment, which federal law defines as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C.S. § 1125(c)(2)(C)(LexisNexis Supp. 2013) "A trademark may be tarnished when it is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of

quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods."

Starbucks, 588 F.3d at 110 (quoting Hormel Foods Corp. v. Jim Henson Productions, Inc., 73

F.3d 497, 507 (2d Cir. 1996)).

The Second Circuit does not recognize an action for dilution where the defendant

uses a plaintiff's mark not to denote the defendant's goods or services, but rather to identify

goods or services as those of the plaintiff.  See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 111-

12 (2d Cir. 2010) ("[t]he district court rejected Tiffany's dilution by blurring claim on the

ground that eBay never used the TIFFANY Marks in an effort to create an association with its

own product, but instead, used the marks directly to advertise and identify the availability of

authentic Tiffany merchandise on the eBay website. . . . We agree.  There is no second mark or

product at issue here to blur with or to tarnish 'Tiffany'") (internal quotation marks and citation

omitted).  None of the Defendants' uses of the Allied mark identified in the instant Complaint

constitutes use of the Allied mark or any similar mark to denote Defendants' goods or services.

Defendants' uses of the mark as a keyword and on its website identify Plaintiff

and the services Plaintiff provides, and its use of Plaintiff's mark as a metatag denotes the

relevance of Defendants' website to Internet users seeking information about Plaintiff.  None of

Plaintiffs' exhibits or factual proffers alleges plausibly that Defendants have utilized the Allied

Mark or a similar mark in commerce in a manner that could dilute Plaintiff's mark by tarnishing

it via association with Defendants' goods or services.  Rather, Plaintiff complains that

Defendants are advertising a service, identified under Defendants' own marks, that challenges

the integrity of Plaintiff's services.  The conduct described in the Complaint is outside the ambit

of the federal dilution cause of action.

Even if the conduct described in the Complaint could be construed as dilutive

within the meaning of the basic statutory definition, the Complaint still fails to state a claim for

dilution because Defendant's conduct falls squarely within the federal statute's fair use

exclusion: Section 1125(c)(3)(A) provides that "fair use . . . of a famous mark by another person

other than as a designation of source for the person's own goods or services, including use in

connection with . . . criticizing or commenting upon the famous mark owner or the goods or

services of the famous mark owner" is not "actionable as dilution by blurring or dilution by

tarnishment."  15 U.S.C.S. § 1125(c)(3)(A)(LexisNexis Supp. 2013).  Such fair use does not

cause harm because it "do[es] not create an improper association between a mark and a new

product but merely identif[ies] the trademark holder's products . . . ."  <u>Toni & Guy (USA) Ltd. v.</u>

<u>Nature's Therapy, Inc.</u>, No. 03 Civ. 2420(RMB), 2006 WL 1153354, at *6 (S.D.N.Y. May 1,

2006) (quoting <u>Playboy Enters. v. Welles</u>, 279 F.3d 796, 806 (9th Cir. 2002) (addressing the

analogous provision of an earlier version of the Lanham Act)).

       The Complaint characterizes Defendants' use of the Allied mark as part of "an

extensive advertising effort" designed to "find clients from the universe of Internet users who are

seeking to learn about Allied and its services."  (Compl. ¶¶ 2, 24, 27) ("Defendants' Website

constitutes advertising for Defendants, and contains content disparaging Allied and the ALLIED

INTERSTATE™ mark").  To the extent that Defendants' advertising permits viewers to

compare Defendants' potentially competitive services with those of the Plaintiff, namely,

pursuing litigation through the Defendants as opposed to contacting Allied directly to resolve

their debts, its use of Allied's mark falls within Section 1125(c)(3)(A)(i)'s exclusion of

comparative advertising from the scope of actionable dilution.  Likewise, the Exhibits annexed

to the Complaint indicate that Defendants' website identifies Allied Interstate as a debt collector

and criticizes or comments upon its services, but does not use Allied's mark to designate the

source of K&S' own services.  Defendants' use of the website, as described in the Complaint and

its exhibits, thus also falls within the scope of the § 1125(c)(3)(A)(ii) exception, and Plaintiff's

Lanham Act dilution claim will be dismissed.

<u>Plaintiff's Claim for Dilution Under N.Y. Gen. Bus. L. § 360-l</u>

New York state law also provides for protection against dilution by blurring and

dilution by tarnishment.  N.Y. Gen. Bus. L. § 360-l;[1] <u>see also</u> Tiffany, 600 F.3d at 111.  "[W]hile

the two statutes may not be identical, they are substantively similar and may be analyzed

together." <u>Tiffany (NJ) Inc. v. eBay, Inc.</u>, 576 F. Supp. 2d 463, 523 (S.D.N.Y. 2008), <u>aff'd in</u>

<u>part, rev'd in part on other grounds</u>, 600 F.3d at 111-12 (affirming District Court's rejection of

plaintiff's federal and state dilution claims on the basis of the same analysis regarding the

absence of a second mark or product that might blur or tarnish plaintiff's mark).

Accordingly, Plaintiff's state law dilution claim fares no better than its federal

claim.  As explained above, Defendants' use of Plaintiff's mark is limited to identification of the

Plaintiff and suggests no dilutive association between Plaintiff's mark and Defendants' services.

Defendants' motion for judgment on the pleadings is therefore granted as to Plaintiff's federal

and state claims for dilution by tarnishment (Counts One and Five).

---

[1]   "Likelihood of injury to business reputation or of dilution of the distinctive quality
of a mark or trade name shall be a ground for injunctive relief in cases of
infringement of a mark registered or not registered or in cases of unfair competition,
notwithstanding the absence of competition between the parties or the absence of
confusion as to the source of goods or services."  N.Y. Gen. Bus. Law § 360-l
(McKinney 2012).

Plaintiff's Claims for Unfair Competition and False Designation of Origin under the Lanham Act, and for Trademark Infringement under New York Common Law (Counts Two, Three and Four)

In Count Two of the Complaint ("Unfair Competition, 15 U.S.C. §1125(a)"), Plaintiff asserts that "Defendants have misrepresented to the public that their services originate from, are connected with, authorized by, or are otherwise associated with Plaintiff," thereby creating consumer confusion "as to the source or sponsorship of Defendants' services." (Compl. ¶ 53.) In Count Three ("False Designation of Origin, 15 U.S.C. §1125(a)"), Plaintiff asserts that "[b]y misappropriating and using Plaintiff's trademark, Defendants have falsely designated that their services originate from, are endorsed by, are connected with, authorized by, or otherwise associated with Plaintiff." (Id. ¶ 58.)

15 U.S.C. § 1125(a)(1)(A), Section 43(a) of the Lanham Act, provides protection against the use in commerce of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [the uses] with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. S. § 1125(a)(1)(A)(LexisNexis 2006). Although the Complaint lists unfair competition and false designation of origin as separate counts, the two are in fact the same cause of action under Section 43(a), and plaintiff's conclusory assertions in support of both claims are materially identical.[2] In order to establish liability under Section 43(a), a plaintiff must show:

---

[2]   See, e.g., MyPlayCity, Inc. v. Conduit Ltd., No. 10 Civ. 1615(CM), 2012 WL 1107648, at *17 (S.D.N.Y. Mar. 30, 2012) ("Section 43(a) is a broad federal unfair competition provision. . . . The law of trademark infringement is but a part of the law of unfair competition and the same test is applied in determining each claim" (internal punctuation

(1) "that it owns a mark deserving of protection," and (2) "that the mark is used in such a way as to create a 'likelihood of confusion' as to the source or sponsorship of the defendant's goods or services." Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011) (citing Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006)).  "It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005).  Plaintiff's claim for New York common law trademark infringement (Count Four) is accordingly analyzed under the same framework as its Lanham Act, Section 43(a) claims.

The Court assumes for the purposes of the following analysis only that Plaintiff has alleged sufficiently that its mark is valid, and turns to the plausibility of Plaintiff's allegations of likelihood of confusion.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc., 712 F.3d 705, 717 (2d Cir. 2013) (quoting Iqbal, 556 U.S. at 678).  Plaintiff's specific factual allegations consist of quotations from Defendants' advertising and exemplars of internet search results.  The allegations and exemplars demonstrate that, as a result of Defendants' use of the ALLIED INTERSTATE™ mark, advertising for Defendants' services will be displayed in response to a query for "Allied Interstate."  That result is an indicator of the relevance, not of the

---

omitted)); see, also, Genometrica Research Inc. v. Gorbovitski, No. 11 Civ. 05802(ADS)(AKT), 2013 WL 394892 *13 (E.D.N.Y. Jan. 31, 2013) ("[i]ndeed, it appears that when § 43(a) is used to allege false designation of origin, it is being used as a vehicle for assertion of traditional claims of infringement of trademarks . . .").

source of Defendants' advertising.  Indeed, the Google search result labels the sponsored

advertising as "Ads related to **allied interstate**" – a description that in no way suggests that it is

advertising for or by Plaintiff.  (<u>See</u> Compl. Ex. D.)  The content of Defendants' advertising –

exhortations to "Stop Collection Calls - is Allied Interstate Calling You?"(<u>id.</u>), "Stop Debt

Collectors – Allied Interstate" (Compl. Ex. B), and the like – facially disassociates Defendants

from Plaintiff's business.  Indeed, Defendants are plainly soliciting complaints about Plaintiff's

services and inviting searchers and visitors to Defendants' website to consider suing the

Plaintiff.  Nothing alleged in or attached to the Complaint provides any plausible factual support

for the confusion element of Plaintiff's unfair competition and false designation of origin claims.

The Court finds that Plaintiff's generalized, conclusory assertions that Defendants' conduct

constitutes a false designation of origin or association with Plaintiff's mark that is likely to

confuse consumers are not supported by plausible factual pleading.  Counts Two, Three and Four

of the Complaint thus fail to state claims upon which relief can be granted and will be dismissed.

   In its opposition papers, Plaintiff requests leave to amend the Complaint to correct

any deficiencies.  Plaintiff may make a motion for leave to file an amended complaint.  The

notice of motion must comply with paragraph A.2.b. of the undersigned's Individual Practices

rules, must be accompanied by a proposed amended complaint, and must be filed no later than

**September 10, 2013.**  Failure to make such a timely motion will result in the dismissal of this

action with prejudice and without further advance notice.

<u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendants' motion for judgment on the pleadings in its entirety.  Plaintiff may make a motion, in the manner set forth above, for leave to file an amended complaint by **September 10, 2013.**  Failure to make such a timely motion will result in the dismissal of this action with prejudice and without further advance notice.  This Memorandum Opinion and Order resolves docket entry number 25.

SO ORDERED.

Dated: New York, New York
      August 12, 2013

_____/S_____
LAURA TAYLOR SWAIN
United States District Judge
